**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

OCTOBER CAREY RAMIREZ,

      Plaintiff,

      vs.                                   CIV No. 21-0458 KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      THIS MATTER is before the Court upon Plaintiff October Carey Ramirez's ("Plaintiff's") Motion to Reverse or Remand Administrative Agency Decision with Memorandum of Law in Support Thereof (Doc. 25), dated April 21, 2022, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that she is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Commissioner responded to Plaintiff's Motion on June 22, 2022 (Doc. 27), and Plaintiff filed a reply brief on July 6, 2022 (Doc. 28). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that Administrative Law Judge ("ALJ") Edward P. Studzinski erred in his decision and will therefore GRANT Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

      In December 2017 Plaintiff applied for Supplemental Security Income benefits. (*See* Administrative Record ("AR") at 307-36). She alleged that she had become disabled on April 1,

2017, due to a heart problem, post-traumatic stress disorder ("PTSD"), fibromyalgia, anxiety disorder, obsessive compulsive disorder, migraines, stage 4 endometriosis, Lyme disease, hypoglycemia, and hypokalemia. (*Id*. at 116-17). Plaintiff's application was denied at the initial level (*id.* at 126-46), and at the reconsideration level (*id.* at 148-170). Plaintiff requested a hearing before an ALJ (*id*. at 172-74), which ALJ Chad Gendreau conducted on October 29, 2019. (*Id.* at 43-76). ALJ Gendreau determined that a supplemental hearing was necessary (*id*. at 73), and on March 31, 2020, ALJ Studzinski conducted a second administrative hearing (*id*. at 77-115). Plaintiff was represented by counsel and testified at both hearings. (*Id.* at 43-115). A vocational expert testified at the second hearing. (*Id.* at 77-115).

On May 18, 2020, ALJ Studzinski issued his decision, finding that Plaintiff was not disabled during the relevant period. (*Id.* at 14-32). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 303-05), and on March 13, 2021, the Appeals Council denied the request for review (*id.* at 1-6), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On May 17, 2021, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.  LEGAL STANDARDS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision

stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

## B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

ALJ Studzinski reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (*See* AR at 14-32). First, he found that Plaintiff had not engaged in substantial gainful activity since December 14, 2017, her application date. (*Id.* at 17). The ALJ then found at step two that Plaintiff suffered from nonsevere impairments as well as the following severe impairments: "degenerative disc disease of the lumbar spine, migraines, somatoform disorder,

posttraumatic stress disorder, anxiety, and personality disorder." (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 18-20).

Moving to the next step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 20-31). Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC to

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in the total amount of time she is able to sit, stand or walk throughout an eight-hour workday. [Plaintiff] needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every half hour. While doing so, she would not need to be off task. [Plaintiff] can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. She is not capable of working where she would be exposed to excessive noise or bright, flashing lights exceeding what is generally encountered in an office-type work environment. [Plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. [Plaintiff] is further limited to simple, routine tasks, work involving no more than occasional decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is not capable of multitasking, or work requiring considerable self-direction. She can work at an average production pace, but not at a significantly above average or highly variable pace. She is further precluded from work involving direct public service, in person or over the phone, although [she] can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. [She] can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

(*Id.* at 20-21). The ALJ next determined that Plaintiff had no past relevant work. (*Id.* at 31).

At the final step, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 31-32). The ALJ therefore concluded that

Plaintiff's work was not precluded by her RFC and that she was not disabled since the date her application was filed. (*Id.* at 32).

## IV.  DISCUSSION

Plaintiff asserts two grounds for remand: (1) that the ALJ's step-three decision is not supported by substantial evidence, because he impermissibly ignored portions of Dr. Mark Zylstra's opinion (*see* Doc. 25 at 11-13); and (2) that the ALJ failed to fully develop the record with a physical consultative examination (*see id.* at 13-16). The Court agrees that the ALJ failed to fully develop the record in this case and will reverse on that ground.

### A.  Evaluation of Dr. Zylstra's Opinion

At step three of his decision, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. (AR at 18). He specified that Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal Listing 12.07. (*Id.*) But Plaintiff submits that in so finding the ALJ failed to properly account for the opinions of Mark Zylstra, Ph.D. (Doc. 25 at 11). In her view, the ALJ's step-three decision is "not supported by substantial evidence as the ALJ impermissibly ignored portions of Dr. Zylstra's opinion after finding it persuasive." (*Id.*). In an effort to show that such an error was harmful, Plaintiff insists that Dr. Zylstra's findings supply substantial evidence to prove that her somatoform disorder met Listing 12.07. (*Id.* (citing 20 C.F.R. Part 404, Subpart P, App. 1, 12.07)).

Listing 12.07 first requires medical documentation of one of the following:

1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

20 C.F.R. Part 404, Subpart P, App. 1, 12.07(A). Secondly, a claimant must demonstrate, under the "paragraph B" criteria of Listing 12.07, the "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or management of oneself. 20 C.F.R. Part 404, Subpart P, App. 1, 12.07(B).

Here, the ALJ determined that Plaintiff had **moderate** limitations in understanding, remembering, or applying information; in interacting with others; and in concentrating, persisting, or maintaining pace. (AR at 18-19). In contrast, he found a **marked** limitation in Plaintiff's ability to adapt and manage herself. (*Id*. at 20). Given that he found a marked limitation in only one area of functioning, the ALJ rightly concluded that the "paragraph B" criteria had not been met. (*Id*.). However, Plaintiff now maintains that the ALJ took inadequate account of Dr. Zylstra's opinions in reaching this determination. (Doc. 25 at 11).

To be sure, the ALJ did not address Dr. Zylstra's findings in his step-three analysis. (AR at 18-20). Instead, he reserved discussion of those findings for step four of his sequential evaluation process. (*See id*. at 29-30). There, he noted that Dr. Zylstra opined Plaintiff "would have substantial difficulty functioning effectively in a competitive work environment [and] that she would have trouble reliably attending work, completing work activities, and dealing with stress or changes in the work environment." (*Id*. at 29 (citing AR at 1005-14)). Most relevant to Plaintiff's claim, he recited Dr. Zylstra's "paragraph B" findings within his step-four discussion: that Plaintiff had "a **moderate to marked** limitation in her ability to respond appropriately to coworkers and supervisors and her ability to maintain concentration, attention and work pace" as well as a "**marked** limitation in her ability to withstand routine work stress and adapt to changes." (*See id*. at 29-30 (emphasis added)).

The ALJ described Dr. Zylstra's examination as "extensive" and his assessment as "detailed." (*Id*. at 30). He found Dr. Zylstra's opinion "generally supported by his own extensive examination," "substantially consistent" with the medical evidence, and "persuasive."[1] (*Id*.). But this is not to say that the ALJ did not have any dispute with Dr. Zylstra's opinions. He specifically noted Dr. Zylstra's failure to specify the frequency with which he would expect Plaintiff to miss work on a regular and continuing basis. (*Id*.). Likewise, he indicated that in his view the "record does not support a finding that [Plaintiff] would experience absences that exceed employer tolerance." (*Id*.). In support, the ALJ observed that the record failed to reference missed appointments, and he recounted Plaintiff's testimony that she was terminated from previous jobs because she needed to sit, not because she missed work. (*Id*. (citing AR at 42-115)). Finally, the ALJ surmised that Plaintiff was able to reliably take her son to and from the bus stop for school each day. (*Id*.). As such, the ALJ found "Dr. Zylstra's opinion that [Plaintiff] would have trouble reliably attending work **minimally persuasive**." (*Id*. (emphasis added)).

With respect to Dr. Zylstra's "paragraph B" findings, though, the ALJ offered little analysis, other than to recite those findings as to each area of functioning. Plaintiff submits that Dr. Zylstra's "paragraph B" findings, as given, would support a finding of disability at step three, because they "document[] more than two areas of limitation at the marked level." (Doc. 25 at 12). But Plaintiff's position does not tell the whole story. Contrary to Plaintiff's representations, Dr. Zylstra did *not* unequivocally find "marked" limitations in more than one area of functioning.

---

[1] Because Plaintiff's application for disability benefits was filed after March 27, 2017, ALJ Studzinski was required to evaluate the medical opinions and prior administrative findings in this case under the revised regulations found in 20 C.F.R. § 416.920c. *See Zhu v. Comm'r SSA*, No. 20-3180, 2021 WL 2794533, at *4 & n.8 (10th Cir. July 6, 2021). Under the revised regulations, no specific evidentiary weight or deference is given to medical opinions or prior administrative findings. *See* 20 C.F.R. § 416.920c(a). Instead, they are evaluated on equal footing using the factors enumerated in the regulations. *See* 20 C.F.R. § 416.920c(c)(1)-(5).

(*See* AR at 1013). In the areas of responding to others and maintaining concentration, attention, and pace, Dr. Zylstra placed Plaintiff's level of functioning somewhere **between moderate and marked**. (AR at 1013; *see also* AR at 29-30).  The Commissioner, for her part, suggests that the ALJ reasonably interpreted these findings "as not supportive of a listing level impairment." (Doc. 27 at 5 (citing AR at 18-20; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007))). The Court agrees with this assessment and, further, is satisfied that the ALJ's decision was sufficiently articulated such that it is capable of meaningful review.

Notably, the ALJ found Dr. Zylstra's opinion "substantially consistent," but not necessarily *wholly* consistent, with the opinions of the state agency psychological consultants, which he described as "generally persuasive." (*See* AR at 29-30). The ALJ specifically observed that the state agency psychological consultants found Plaintiff "moderately limited" in the "paragraph B" criteria, save her ability to understand, remember, or apply information, in which they found Plaintiff mildly limited. (*Id*. at 29 (citing AR at 126-46, 148-70)). The ALJ went on to conclude that the consultants "supported their opinion with an extensive analysis of the objective medical evidence, the claimant's treatment history and her subjective complaints" and, further, that "[t]heir opinions are consistent with the medical evidence as a whole and with the claimant's reported ability to function, despite her psychiatric diagnoses." (*Id*.).

That the ALJ's own "paragraph B" findings align with the more definitive findings of the state agency consultants is not indicative of error or of ignorance to Dr. Zylstra's findings. The ALJ acknowledged, indeed explicitly recited, Dr. Zylstra's "paragraph B" findings, and neither his step-three findings nor his analysis were directly at odds with those findings. Simply, the ALJ's "paragraph B" findings were more precise.

The Court is not persuaded by Plaintiff's suggestion that the ALJ failed to consider conflicting evidence from Dr. Zylstra at step three of his analysis. Where Dr. Zylstra did not clearly find marked limitations in two areas of functioning, there were, in fact, no "material inconsistencies or ambiguities" that the ALJ was required to resolve in this regard. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The Court finds no legal error in the ALJ's treatment of Dr. Zylstra's "paragraph B" findings and will not reverse as to Plaintiff's first claim.

### B.  Development of the Record

Next, Plaintiff maintains that the ALJ erred by failing to fully develop the record. (Doc. 25 at 13).  She notes that a prior ALJ determined that a physical consultative examination was necessary before making a disability determination in her case; however, no such examination took place. (*See id*. at 16; Doc. 27 at 6-7). The record confirms that a different ALJ, Chad Gendreau, presided at Plaintiff's first administrative hearing on October 29, 2019. (*See* AR at 42-76). At that first hearing, ALJ Gendreau determined that that the record required additional medical information before he could proceed with vocational testimony. (*See* AR at 71-74). ALJ Gendreau explained that he had elicited "a lot of testimony about treatment and records and prescriptions" that were not in the file. (AR at 68). He indicated that he could not discern whether the records had not yet been produced, were missing, or failed to exist. (*Id*.). As for the records that were available, ALJ Gendreau found many of those records internally inconsistent and at odds with Plaintiff's testimony. (*Id*). For example, the treatment records indicated Plaintiff's conditions were stable, but she testified otherwise. (*Id*.) The objective medical records suggested mild back pain, but a medical provider had recently surgically implanted a spinal cord stimulator in Plaintiff's back. (*Id*.). There were no mental health treatment notes despite alleged

daily therapy. (*Id*.). Finally, and perhaps most importantly, the ALJ observed, "And I've got a consultative exam that says it's somatic." (*Id*.).

Because he considered Plaintiff's medical record contradictory and incomplete, ALJ Gendreau elected to hold a supplemental hearing following the receipt of additional records and a physical consultative examination. (*Id*. at 71-73). He observed that Plaintiff had filed a prior successful application for disability benefits in 2011, in which case she was determined to have "met . . . listing 12.06 and 12.07, somatoform disorder."[2] (*Id*. at 71). As for the application before him, ALJ Gendreau concluded, "We'll get that [consultative examination] scheduled because I've got a psychological evaluation, and I can certainly understand what, I mean, the recent psychological examination was suggesting somatoform disorder as well." (*Id*. at 74).

On October 31, 2019, a "Request for DDS Assistance in Obtaining Consultative Examination(s)" was issued, which indicated that "ALJ Gendreau requests a Physical CE along with a Medical Source Statement . . . ." (*Id*. at 1744-45). The form was authorized by the SSA's Hearing Office Director, who also sent a letter to Plaintiff's counsel on that same date advising that he had asked DDS to schedule a consultative examination, which was "necessary for proper evaluation of [Plaintiff's] claim." (*Id*. at 1754). The same request was issued again on November 15, 2019 (*id*. at 1756-57), on November 18, 2019 (*id*. at 1768-69), on December 6, 2019 (*id*. at 1780-81), and on February 14, 2020 (*id*. at 1823-24).

A December 6, 2019 letter from Plaintiff's attorney's office to the Office of Hearing Operations advised that Plaintiff had moved to Pueblo, Colorado but that she would be flying to

---

[2] Plaintiff's attorney explained at the October 30, 2019 administrative hearing before ALJ Gendreau that Plaintiff's previous SSI application "ended in benefits" in 2011, but "those benefits ended in 2013 at [Plaintiff's] request." (AR at 52). According to Plaintiff's testimony, the SSA in Florida advised her that if she felt she could work, she needed to cancel her benefits. (AR at 69). Plaintiff testified that she canceled her benefits, believing she was capable of work, but a subsequent decline in her health prompted the instant application for benefits. (AR at 69).

Wisconsin for her hearing before ALJ Gendreau on March 31, 2020. (AR at 517). A February 26, 2020 Report of Contact explains that Plaintiff would be unavailable to attend a consultative examination in Colorado on March 5, 2020, because she had relocated to New Mexico. (*Id*. at 515). A notation on that form indicates that the SSA Hearing Office's representative advised Plaintiff's representative that she "would see about cancelling CE and rescheduling near [Plaintiff's] home in New Mexico." (*Id*.). A March 11, 2020 letter from Plaintiff's attorney's office to the Office of Hearings advised that Plaintiff "demanded to attend a CE in New Mexico before she [would] appear at her hearing on March 31, 2020[,]" and that Plaintiff would "not be present at the hearing otherwise." (*Id*. at 516). Plaintiff's counsel sent a subsequent letter to ALJ Gendreau a few days before the scheduled hearing, however, indicating that Plaintiff agreed to attend the hearing by telephone, in light of the closures of the SSA offices. (*Id*. at 529).

It appears from the record and from representations of counsel (*see, e.g.*, Doc. 25 at 16; Doc. 27 at 6-7[3]) that no physical consultative examination took place; yet, Plaintiff appeared telephonically at the March 31, 2020 hearing. (AR at 79). ALJ Studzinski presided over that telephonic hearing, and neither he nor Plaintiff or her counsel broached the topic of the outstanding physical consultative examination ordered by ALJ Gendreau. (*Id*. at 77-115).

Without the benefit of a physical consultative examination, ALJ Studzinski proceeded to determine an RFC, which included mental, postural, exertional and environmental limitations. (*See id*. at 20-21). As noted above, ALJ Studzinski limited Plaintiff to jobs that would permit alternating posture. (*Id*.). He also found Plaintiff able to carry up to 20 pounds occasionally and 10 pounds frequently, to only occasionally climb ramps and stairs, and occasionally stoop, kneel, balance, crouch, and crawl. (*Id*.). He determined that Plaintiff could never climb ladders, ropes,

---

[3] The Commissioner states that "[f]or whatever reason – possibly the beginning of the pandemic – the consultative examination did not occur." (Doc. 27 at 6-7).

or scaffolds and must avoid hazardous environments, including driving at work, operating moving machinery, working at unprotected heights or around exposed flames, and working around unguarded large bodies of water or hazardous machinery. (*Id*. at 21).

Plaintiff maintains that the ALJ failed to properly develop the record with respect to her somatoform disorder before reaching this RFC. (Doc. 25 at 13-16). She submits that while somatoform disorders are included under the mental impairment listings, they have "an important physical component." (*Id*. at 14). True, according to SSA policies, somatoform disorders are "characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general behavior or experience." POMS DI 34001.032(6)(a). The POMS further indicate that the symptoms of somatoform disorders may include "pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness or deafness." *Id*.  In light of the significant physical component of somatoform disorders, Plaintiff insists that "[a] physical consultative examination was necessary to fully develop the record in this case." (Doc. 25 at 15). At least one ALJ agreed with her. (*See* AR at 74). Indeed, it appears ALJ Gendreau was so convinced of the need for a physical consultative examination that he initiated five separate requests.

As it turned out, however, ALJ Gendreau did not hold the supplemental hearing or issue the disability determination in Plaintiff's case. (*See id*. at 14-32). Instead, ALJ Studzinski presided over the second administrative hearing and was charged with deciding her disability claim. (*See id*. at 14-32, 77-115). "[B]ecause a social security disability hearing is a nonadversarial proceeding," ALJ Studzinski was responsible "to ensure that an adequate record

[was] developed during the disability hearing consistent with the issues raised." *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997)). This duty to develop "pertains even if the claimant is represented by counsel." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). Broadly speaking, the regulations permit an ALJ to order a consultative examination if the medical sources do not provide sufficient evidence about an impairment for a disability determination. *See* 20 C.F.R. § 416.917.

In *Hawkins*, the Tenth Circuit grappled with the "difficult issue" of "what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be *required* to look further." 113 F.3d at 1166 (emphasis added). Beginning with the proposition that the SSA has broad latitude in ordering consultative examinations, the Tenth Circuit in *Hawkins* explained that a consultative examination is nevertheless required when there is a direct conflict in the medical evidence requiring resolution, when the medical evidence is inconclusive, or when additional tests are required to explain a diagnosis already contained in the record. *Id.* (citing *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990); 20 C.F.R. § 404.1519a(b)(4); *Thompson*, 987F.2d at 1491). The court's reasoning in *Hawkins* comports with the SSA's regulations, including 20 C.F.R. § 416.919a(b), which provides:

> [a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

The court, in *Hawkins*, explained that the "starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decisions requiring further investigation." *Hawkins*, 113 F.3d at 1167 (citation omitted). Although "[i]solated and unsupported comments by the claimant are insufficient[,]" if the claimant can point to evidence in the record "sufficient to suggest a reasonable possibility that a severe impairment exists[,]" the ALJ must order a consultative examination "if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. (citation omitted).

Plaintiff easily meets her initial burden to demonstrate a reasonable possibility that she suffered from somatoform disorder. At least one examining source diagnosed the disorder, (*see, e.g.*, AR at 1013), and other providers noted a somatic component to her subjective complaints (*see, e.g.*, *id*. at 555). Plaintiff's attorney argued that Plaintiff's somatoform disorder met Listing 12.07. (*See*, *e.g.*, *id*. at 83). ALJ Studzinski himself characterized Plaintiff's somatoform disorder as "severe." (*Id*. at 17). In discussing the impairment, he acknowledged that Plaintiff was previously granted disability because her somatoform disorder met the criteria of Listings 12.06 and 12.07. (*Id*. at 23). Upon his own review of Plaintiff's records from the relevant time period, ALJ Studzinski observed that there was "a psychosomatic component involved in [Plaintiff's] reported physical limitations." (*Id*.). Acknowledging that Plaintiff had not received treatment specifically for the disorder, the ALJ nevertheless surmised that her complaints of physical pain "appear to have a strong somatic component." (*Id*. (citing AR at 555)). He suggested that Plaintiff's treatment records consistently show complains of abdominal and joint pain despite

generally unremarkable physical examinations. (*Id*. (citing AR at 899, 916-78, 1059, 1114, 1422, 1472, 1590, 1894, 1899)). According to ALJ Studzinski, Plaintiff's "somatic disorder was best demonstrated during her June 2018 psychological consultative examination" by Dr. Zylstra. (*Id*. (citing AR at 1005-14)). The ALJ noted that Dr. Zylstra identified somatization behavior, including Plaintiff's preoccupation with her physical and mental issues at the cost of her ability to maintain control of her environment. (*Id*. at 24).

Although ALJ Studzinski determined that Plaintiff's "subjective complaints of pain are not supported by objective clinical findings[,]" he nevertheless "accepted that [Plaintiff] has a severe somatic disorder." (*Id*. at 26). He went on to determine, however, that her somatoform disorder was not disabling. (*Id*.). In support, he emphasized that Plaintiff was able to care for herself, her autistic child, and her numerous pets as well as manage interstate moves with the help of movers. (*Id*.). Notably, though, ALJ Studzinski rendered this disability determination without receiving or addressing the need for a physical consultative examination.

The question before the Court, then, is whether a consultative examination was necessary or would have been helpful in resolving the issue of the degree to which Plaintiff's somatoform disorder affects her functioning. *See Hawkins*, 113 F.3d at 1167. The Commissioner maintains that the ALJ had a sufficient record upon which to decide Plaintiff's disability claim. (Doc. 27 at 6). Conceding that ALJ Gendreau and ordered a physical consultative examination that never transpired, the Commissioner places the blame on Plaintiff, emphasizing that she was the one who was unable to attend a scheduled examination due to her recent relocation. (*Id*. at 7). But the Commissioner does not provide any authority to support the notion that a claimant's unavailability at one scheduled consultative examination extinguishes an ALJ's duty to develop the record.

Second, the Commissioner emphasizes that Plaintiff was represented by counsel at the second administrative hearing, where she made no mention of the previously-requested physical consultative examination. (*Id*.). While it is true that an ALJ should generally be able to rely upon counsel to structure the presentation of a disability case and to identify issues requiring further development, *see Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004), it is less clear that counsel's failure to demand a physical consultative examination at the telephonic hearing here resolves the issue before the Court. Again, a physical consultative examination had already been ordered by ALJ Gendreau, who followed up with four additional requests that the examination take place. Further, a representative of Plaintiff had demanded a physical consultative examination in advance of the second administrative hearing. Notably, the Commissioner speculates that the intervening pandemic may have contributed to the physical consultative examination not taking place prior to the second administrative hearing. (*See* Doc. 27 at 6-7). While Plaintiff's counsel did, as the Commissioner maintains, indicate at the second administrative hearing that the record was "complete," context reveals that this statement was in response to ALJ Studzinski asking if Plaintiff needed additional time to submit records already generated. (*See* AR at 84). Thus, by describing the record as "complete," Plaintiff's counsel was not commenting on whether the record was fully developed with respect to Plaintiff's somatoform disorder. At minimum, Plaintiff's counsel highlighted the lack of treating source statements when she observed, "[a]s far as the doctor's treating statements, I don't believe I saw any." (*Id*.). Under these circumstances, the Court will not deny Plaintiff's motion on the basis that she was represented by counsel who failed to directly demand a physical consultative examination during the administrative hearing. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071

(10th Cir. 2007) (noting that the ALJ retains a duty to develop the record even when a claimant is represented by counsel).

Third, the Commissioner suggests that additional treatment files, which were made part of the record by the time of ALJ Studzinski's hearing, rendered a physical consultative examination unnecessary. (Doc. 27 at 8 (citing AR at 1792-1811, 1813-21, 1840-1944)). But the Court is not convinced that the records to which the Commissioner refers alleviated the need for a physical consultative examination. While the records do, as the Commissioner observes, contain neurosurgical evaluations from before and after the placement of Plaintiff's spinal cord stimulator, they do not clarify her physical functioning or the extent to which her reported back and pelvic pain may have been somatic. (*See* AR at 1792-1811). Rather, they document Plaintiff's subjective complaints of pain, recite findings from a February 2018 MRI (*i.e.*, mild foraminal narrowing at L5/S1 and a tiny synovial cyst at L4/5), and explain that surgery was not indicated but state, in a conclusory fashion, that Plaintiff was an "excellent candidate" for a spinal cord stimulator. (*See id*.). Overall, the additional records suggest that Plaintiff has not received a thorough evaluation of her somatoform disorder or of her physical functioning in light of that disorder. (*See id*.). Given the complicated nature of somatoform disorders and the interplay between mental and physical symptoms, the ALJ would have no doubt still benefited from technical evidence delving into the symptoms of Plaintiff's somatoform disorder and, specifically, its effects on her physical functioning. Simply, a physical consultative examination would have provided helpful objective evidence with respect to Plaintiff's physical functioning.

As both ALJs alluded to, it is difficult to reconcile Plaintiff's subjective complaints with some of the treatment she received – for example, the placement of a spinal cord stimulator, given the available objective medical evidence. Likewise, there are suggestions of malingering in

the record but also opinions that Plaintiff's behaviors are somatic, sometimes even within the same medical opinion. In ALJ Studzinski's words:

> there are many, many instances in which the doctors are simply saying that what [Plaintiff is] telling them [is] inconsistent with what they[ were] observing. They're showing they watch [her] walk downstairs, while holding the walker. They watch [her] showing videos of dancing, when [she] claim[s] that [she is] extremely limited in [her] ability to move.

(*Id*. at 91-92). Dr. Zylstra in particular described behavior indicative of malingering, but he also opined that he did "not necessarily see malingering so much as engaging in somatization behavior that may very well be on an unconscious level." (*Id*. at 1012). In short, the conflicts that ALJ Gendreau identified at the first administrative hearing related to Plaintiff's somatoform disorder were not resolved at the time of the second hearing.

Ultimately, the Court agrees with Plaintiff that absent a physical consultative examination, ALJ Studzinski lacked sufficient evidence to fully evaluate the limiting effects of her somatoform disorder in this unique case. The Court will therefore reverse and remand as to this claim.

## V.  CONCLUSION

The ALJ erred in his review of Plaintiff's application for supplemental security income by failing to fully develop the record in accordance with controlling legal standards as to her somatoform disorder. Accordingly, Plaintiff's Motion to Reverse or Remand Administrative Agency Decision with Memorandum of Law in Support Thereof (Doc. 25) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**